**FILED**
**APRIL 19, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37925-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| REED J. ALEFTERAS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Reed Alefteras appeals the trial court's order denying

his CrR 7.8 motion for relief, which would have allowed him to withdraw his guilty plea.

He raises four arguments on appeal, two of which he did not raise below. We disagree

with his two preserved arguments, do not review his two unpreserved arguments, and

affirm the trial court.

FACTS

Reed Alefteras was employed as a bail bond recovery agent when he and three

colleagues attempted to recover two subjects at a motel in Spokane. The men were

authorized to detain Shanda Hanson and Gary Todd; Ms. Hanson was in a room at the

motel with another man, Justin Jordan, who the bail bond recovery agents had no

authority to detain.

The four agents, armed with firearms, ordered Mr. Jordan out of the room by name

and threatened to kill him. When he did not emerge, Mr. Alefteras broke a window and

another bail bond recovery agent threw oleoresin capsicum[1] into the room and then forced the door open and entered the room. The agents detained Mr. Jordan in handcuffs and interrogated him about the location of Mr. Todd; they offered to release Mr. Jordan in exchange for information. Ms. Hanson was also handcuffed and escorted from the area.

*Charges and plea agreement*

On February 23, 2017, Mr. Alefteras and two of his fellow bail bond recovery agents were charged with unlawful imprisonment and second degree assault of Mr. Jordan. A charge of first degree burglary was added on August 31, 2017. The probable cause statement for the charges was an affidavit of facts authored by Detective Lonnie Tofsrud. The statement was based on Detective Tofsrud's viewing of footage from a body camera worn by one of the bail bond recovery agents, his interview with Ms. Hanson, and the expert opinion of Mike Rocha, a trainer and subject authority in the bail bond recovery industry. In Mr. Rocha's opinion, the bail bond recovery agents' entry into the motel room did not meet industry standards.

In 2016, Mr. Alefteras had also been charged with first degree robbery and fourth degree assault in an unrelated incident. While the current case was pending, he was

---

[1] Oleoresin capsicum is a pepper spray used to disrupt a subject's bodily functions with transient effects.

found guilty on both counts by a jury on January 25, 2018. He was sentenced to 31 months' confinement on the charges on March 1, 2018.

After Mr. Alefteras was convicted in the robbery case, he entered into a plea agreement with the State in this case in which he would plead guilty to armed criminal mischief against property in violation of RCW 9A.84.010(1) and (2)(b) and the State would recommend a sentence of seven days' time served. One of Mr. Alefteras's codefendants accepted a similar deal. The amended information charged the crime:

> CRIMINAL MISCHIEF, committed as follows: That the defendant, REED J. ALEFTERAS, in the State of Washington, on or about September 14, 2016, being armed with a firearm, a deadly weapon, while acting with three or more persons, did knowingly and unlawfully, participate in the use of force against property, to-wit: room 161, belonging to the Econolodge Motel.

Clerk's Papers (CP) at 48.

Mr. Alefteras completed a statement on plea of guilty with his attorney. In the statement, he acknowledged he understood he had been charged with criminal mischief and was informed the elements were: "On 9-14-16, while armed with a firearm, acting with 3 or more persons, [defendant] participated in use of force against property." CP at 50. The statement also indicated: "I plead guilty to: count 1 criminal mischief . . . in the amended information. I have received a copy of that Information." CP at 63. Mr.

3

No. 37925-6-III
*State v. Alefteras*

Alefteras agreed in the statement that the court could review the statement of probable cause to establish a factual basis for his plea.

*Guilty plea proceedings*

At the change of plea and sentencing hearing on March 2, 2018, the court first reviewed the new charge with Mr. Alefteras:

> THE COURT: . . . I want to make sure you understand all of this. The first one I'm going to start with is the amended information. The original information had three counts. This one is now charging you with criminal mischief. It's my understanding you were going to be pleading guilty to that, is that correct?
> [Mr. Alefteras]: Yes, your Honor.
> THE COURT: Have you had the opportunity to go through this amended information with your attorney?
> [Mr. Alefteras]: I have, your Honor.
> THE COURT: Do you understand the elements of the crime that you will be pleading to here today?
> [Mr. Alefteras]: I do, your Honor.
> THE COURT: Do you have any concerns for that?
> [Mr. Alefteras]: I do not.

Report of Proceedings (RP) (Mar. 2, 2018) at 6-7. The court next discussed Mr. Alefteras's statement on plea of guilty and confirmed he had read it with his attorney and had no questions. The court listed his constitutional rights and questioned Mr. Alefteras:

> THE COURT: . . . Did you understand those rights?
> [Mr. Alefteras]: I did, your Honor.
> THE COURT: Do you understand by entering a plea today, you are giving those up or waiving those rights?
> [Mr. Alefteras]: Yes.

4

> THE COURT:  Is that what you want to do here today?
> [Mr. Alefteras]:  Yes.
> THE COURT:  Waive your rights and enter this guilty plea.
> [Mr. Alefteras]:  I do.

RP (Mar. 2, 2018) at 8-9.  The court informed Mr. Alefteras of the possible sentencing

consequences and confirmed he understood that it did not have to abide by the State's

recommendation of credit for time served.  The court discussed the factual basis for Mr.

Alefteras's plea:

> THE COURT:  In addition, I have to have a factual basis to accept
> [your guilty plea].  In other words what the facts say [you] did, you have to
> meet what it is that you're pleading to.  Or there needs to be a legal basis for
> me to accept it.  So your statement indicates that I can rely on the probable
> cause affidavit and that there is a factual basis for this.  Do you agree with
> that?
> [Mr. Alefteras]:  Yes.
> THE COURT:  Do you understand what it means for me to rely on
> the probable cause statement?
> [Mr. Alefteras]:  I believe so.  You rely upon the police report.
> THE COURT:  Correct.  Is that acceptable to you?
> [Mr. Alefteras]:  Yes.
> THE COURT:  Do you agree that there are sufficient [ ] facts in that
> probable cause affidavit to find you guilty of criminal mischief?
> [Mr. Alefteras]:  I do.
> THE COURT:  I concur with that.  After reading it, I do find it meets
> the elements of criminal mischief. . . .

RP (Mar. 2, 2018) at 10-11.  The court confirmed Mr. Alefteras's criminal history and

accepted his guilty plea:

5

THE COURT: All right. Sir, with regards to the original charge of criminal mischief committed on or about September 14th, 2016 here in Spokane County, Washington, how do you plead?

[Mr. Alefteras]: Guilty.

THE COURT: Is that a free and voluntary plea?

[Mr. Alefteras]: Yes.

THE COURT: Has anybody threatened you or anybody else to get you to enter this plea?

[Mr. Alefteras]: No.

THE COURT: Has anybody promised you anything other than, perhaps, the recommendation of sentencing by the state, to get you to enter this plea?

[Mr. Alefteras]: No.

THE COURT: So sir, what I can tell you is based upon what you told me today, I find your plea is knowing and voluntary, that you know what you're doing. I have a factual basis to accept your plea and so I will do that. . . .

RP (Mar. 2, 2018) at 12-13. The court sentenced Mr. Alefteras to the recommended seven days' confinement with credit for time served.

*Postguilty plea developments*

After Mr. Alefteras and one codefendant pleaded guilty to criminal mischief, the remaining codefendant proceeded to trial on the original charges and was acquitted after successfully arguing self-defense.

In mid-January 2018, the Spokane Police Department began an internal affairs (IA) investigation after Detective Tofsrud informed a Spokane County deputy prosecutor that Corporal Jeff McCollough of the Spokane Police Department lied in a report; the

6

report concerned the arrest of a confidential informant used by Detective Tofsrud. The State ultimately did not take the case against the confidential informant forward, based in part on the allegation Corporal McCollough lied in his report. It placed Corporal McCollough on its list of officers being investigated for untruthfulness and made a complaint to the Spokane Police Department. As a result of the investigation into Corporal McCollough's untruthfulness, the investigators alleged violations against Detective Tofsrud and his supervisor. The IA report was completed on March 28, 2018. On May 22, 2018, an administrative review panel sustained the four allegations of violations of professional and ethical standards against Detective Tofsrud. The department issued a letter of reprimand, to which Detective Tofsrud responded on July 24, 2018.

On August 30, 2018, the Spokane County Prosecuting Attorney's Office placed Detective Tofsrud on its "Potential Impeachment Disclosure List" as required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), based on the administrative review panel's sustained finding Detective Tofsrud knowingly made "false, misleading or malicious statements that are reasonably calculated to harm or destroy the reputation, authority, or official standing of the [Spokane Police D]epartment or members thereof." CP at 178.

7

*CrR 7.8 motion for relief from judgment*

On March 4, 2019, Mr. Alefteras filed a motion for relief from his judgment and sentence and requested to withdraw his guilty plea. In the motion, he argued there was no factual basis for the plea under CrR 4.2 because the statement of probable cause established he had authority to use force to enter the room to apprehend Ms. Hanson. He argued the plea was not knowing, voluntary, and intelligent because the documents did not apprise Mr. Alefteras of the sentencing consequence of community custody. He argued he was not apprised that self-defense was an affirmative defense to his original charges and thus counsel was constitutionally ineffective. Finally, he argued the State failed to disclose material *Brady* evidence about Detective Tofsrud.

The State responded that Mr. Alefteras had provided no evidence to rebut the presumption, established by his written statement of guilty plea, that his plea was voluntary. It argued there was sufficient evidence to support a finding of unlawful use of force against property and there did not need to be a finding beyond a reasonable doubt for a guilty plea. The State pointed out that community custody was not a possible sentencing consequence for criminal mischief against property, only against persons, and so Mr. Alefteras was accurately informed of the sentencing consequences. It argued Mr. Alefteras had failed to provide any evidence he was not aware of the availability of self-

defense as an affirmative defense. Finally, the State argued that it was not required to

disclose *Brady* material before a guilty plea nor was there any *Brady* material to disclose

regarding Detective Tofsrud at the time Mr. Alefteras entered his guilty plea.

On July 24, 2020, Mr. Alefteras filed a declaration stating that he did not

understand the difference in what the State needed to prove in order to convict him of the

three original charges versus the charge of criminal mischief against property. He had

never been informed that he could argue self-defense in regard to the original three

charges and, had he known, he would not have pleaded guilty to any of the charges. He

was not aware he could have been sentenced to community custody and would not have

pleaded guilty if he knew that was a possibility. He now understood the affidavit of facts

did not establish the elements to convict him of criminal mischief and he did not believe a

jury would have sufficient evidence to convict him based on the facts established at the

plea.

*CrR 7.8 motion hearing*

On October 23, 2020, at a combined hearing on Mr. Alefteras's CrR 7.8 motion

and that of his codefendant, who also sought to withdraw his guilty plea, the court heard

testimony from the trial attorneys for both defendants and the defendants themselves. Mr.

Alefteras argued that the bail bond recovery agents had lawful authority to use force to

9

enter the room because they were recovering Ms. Hanson and therefore there was no

factual basis to find the use of force unlawful. He argued it was a denial of due process

not to disclose information about the investigation into Detective Tofsrud, but

acknowledged that Supreme Court precedent held that *Brady* disclosure was not required

before trial prior to or during plea negotiations. He suggested the Washington

Constitution demanded more openness of the government.

The court first addressed the voluntariness of the pleas, noting that it had not been

provided transcripts from the guilty pleas and that regarding the court's specific

recollection of what happened,

> I don't have that recollection. What I can tell you is I go through
> constitutional rights with each and every defendant that pleads guilty in
> front of me, asking them if they understand those rights and asking them if
> they are still wishing to plead guilty giving up those rights.

RP (Oct. 23, 2020) at 52. The court pointed to case law that held that when the court

orally inquires into voluntariness, "the presumption of voluntariness is almost well-nigh

irrefutable." RP (Oct. 23, 2020) at 52. Because there was no evidence the court had not

followed its usual procedure, it concluded that "voluntariness is not in question."

RP (Oct. 23, 2020) at 52-53.

Addressing whether the pleas were knowingly and intelligently entered into, the

court noted that "[t]he factual basis for removing or withdrawing a guilty plea is not

proof beyond on a reasonable doubt. Again, it's not the trial proof. But the facts must set

forth the elements of the crime." RP (Oct. 23, 2020) at 53. The court accepted that the

bail bond recovery agents had a lawful right to enter the room but noted that in the

probable cause affidavit Mr. Rocha "specified that based upon industry standards, the

force was excessive." RP (Oct. 23, 2020) at 53. It stated that while the evidence

"certainly is refutable [if] argued at trial, this is not a trial, it's a guilty plea that was being

entered." RP (Oct. 23, 2020) at 53-54.

The court further discussed a bail bond recovery agent's privilege to enter

buildings:

> I agree, case law does indicate that bondsmen do have a limited
> common law privilege to enter dwellings to enforce their duties or the
> responsibility of taking into custody the person that they are looking for.
> But this privilege is limited to acting reasonably. Within the probable cause
> affidavit there are sufficient facts to show that they were not acting
> reasonably. Again, this isn't trial that I'm dealing with. The facts in the
> probable cause affidavit are used for purposes of accepting a plea. So the
> use of force is a privilege, and it is not unlimited, and potentially criminal
> responsibility can arise from that. Which is where these two gentlemen
> found themselves in their pleas. From my perspective, there are sufficient
> facts and not a lack of information within the probable cause affidavit to
> support these pleas.

RP (Oct. 23, 2020) at 54.

The court agreed with the State that community custody was not an available

punishment for criminal mischief against property and "the failure of the court to advise

11

the defendants on something that wasn't an option for them is not, in my perspective, a

basis to set aside this plea." RP (Oct. 23, 2020) at 55. The court also rejected the failure

to advise the defendants of their self-defense rights as a basis to set aside the pleas

because

> that's not part of the court's responsibility in a guilty plea. The court does not address negotiations between the State and the defense. The court certainly doesn't get into the middle of what the advice between defense counsel and defendant are.
>
> The court's concern is whether the defendant knows what it is that they're entering into, knows the consequences, and are doing it voluntarily. Based upon that, again, there's no case law that I saw that says the court is supposed to be advising the defendants of their self-defense rights.

RP (Oct. 23, 2020) at 55. The court opined:

> Hindsight is 20/20. It's always easy to look back and say, well, gee, if I'd only thought of that I would have made a different decision. That doesn't help. It's easy to make a decision after the fact, after knowing what happened, after knowing that another codefendant went to trial and prevailed with a jury. It doesn't change this court's perspective that the plea was knowingly, voluntarily and intelligently made, and that defense counsel did not do anything to prevent that knowledge from being provided to his client.

RP (Oct. 23, 2020) at 57. The court concluded that based on the testimony it heard, it

could not find "that they were not properly advised of the consequences of their actions in

entering these pleas." RP (Oct. 23, 2020) at 58.

12

The court finally addressed the disclosure of impeachment information about Detective Tofsrud, finding there was no evidence that the State was aware of Detective Tofsrud's situation as a *Brady* officer until after the defendants entered their pleas. It also noted that Supreme Court precedent indicated the government had no responsibility to disclose *Brady* information at a plea negotiation.

The court concluded:

> Based upon all of that information, I do not find a basis to set aside either defendant's guilty pleas. I do find that the pleas were knowing, voluntarily and intelligently made, and that the defendants' motions to vacate their pleas at this point in time are denied.

RP (Oct. 23, 2020) at 58.

The court entered written findings of fact and conclusions of law and an order denying Mr. Alefteras's motion to withdraw his plea. The findings of fact and conclusions of law reflected its oral ruling. It explicitly incorporated its oral ruling in its conclusions of law.

Mr. Alefteras timely appealed to this court.

## ANALYSIS

A.     CrR 7.8 MOTION TO WITHDRAW GUILTY PLEA

Mr. Alefteras contends the trial court erred by denying his CrR 7.8 motion for relief from judgment because his guilty plea was involuntary. We disagree.

13

### 1. Actual and substantial prejudice

We review a court's decision on a CrR 7.8 motion to withdraw a guilty plea for abuse of discretion. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). "A trial court abuses its discretion if its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" *Id.* (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). Where a trial court weighs evidence following a CrR 7.8 hearing, we review its findings of fact for substantial evidence and its conclusions of law de novo. *State v. Schwab*, 141 Wn. App. 85, 91, 167 P.3d 1225 (2007). Unchallenged findings of fact are treated as verities on appeal. *State v. Escalante*, 195 Wn.2d 526, 531, 461 P.3d 1183 (2020).

Where a motion to withdraw a plea is made after judgment is entered, a defendant must also meet the requirements of CrR 7.8; demonstrating a manifest injustice alone is not enough. CrR 4.2(f); *Lamb*, 175 Wn.2d at 128. In a collateral attack under CrR 7.8, a defendant must show actual and substantial prejudice even when asserting "constitutional errors that might be presumed prejudicial on direct review." *State v. Buckman*, 190 Wn.2d 51, 64, 409 P.3d 193 (2018). To show actual and substantial prejudice in a CrR 7.8 motion to withdraw a guilty plea, a defendant "must show that the outcome of the guilty plea proceedings would more likely than not have been different had the error not

14

occurred." *Id.* at 60. Specifically, the defendant must "show that a rational person in his circumstances would have declined to plead guilty and would more likely than not have gone to trial." *Id.* at 58.

Mr. Alefteras stated in his declaration that he would not have pleaded guilty had he known of the availability of a self-defense argument regarding the original three crimes or the possibility of community custody at sentencing. What *he* would have done is not the relevant inquiry. Rather, Mr. Alefteras must demonstrate that had a rational person in his circumstances been advised that self-defense was an available defense, the person would not have pleaded guilty and would have gone to trial. We are unconvinced that a rational person in Mr. Alefteras's circumstances, but advised that self-defense was an available defense, would have risked going to trial on several serious charges rather than plead guilty to a lesser charge and serve no further jail time. We conclude the trial court did not err in denying Mr. Alefteras's CrR 7.8 motion.

Yet the trial court did not deny Mr. Alefteras's motion for his failure to demonstrate actual and substantial prejudice. For this reason, we elect to address some of Mr. Alefteras's arguments on appeal. What follows is dictum.

### 2. *Manifest injustice*

Under CrR 4.2(f), a trial court must allow a defendant to withdraw his guilty plea if it is necessary to correct a manifest injustice. A manifest injustice is one that is "obvious, directly observable, overt or not obscure." *State v. Taylor*, 83 Wn.2d 594, 598, 521 P.2d 699 (1974). A showing that a plea was involuntary establishes a manifest injustice. *Id.* at 597.

Mr. Alefteras advances two arguments as to why his guilty plea was not knowing, voluntary, and intelligent in his CrR 7.8 motion. He first argues the detective's affidavit of facts did not establish his use of force was unlawful and so he did not fully understand the law in relation to the facts. He next argues he was not fully apprised of the elements of criminal mischief because his statement on plea of guilty omits the element of acting unlawfully.

A guilty plea is not truly voluntary "'unless the defendant possesses an understanding of the law in relation to the facts.'" *In re Pers. Restraint of Keene*, 95 Wn.2d 203, 209, 622 P.2d 360 (1980) (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)). "When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d

16

810 (1998). When a judge proceeds to inquire orally of the defendant and is satisfied "'on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable.'" *State v. Branch*, 129 Wn.2d 635, 642 n.2, 919 P.2d 1228 (1996) (quoting *State v. Perez*, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)). When reviewing a challenge to the factual basis for a guilty plea, we evaluate whether sufficient evidence exists that would sustain a jury's finding of guilt. *State v. Bao Sheng Zhao*, 157 Wn.2d 188, 198, 137 P.3d 835 (2006). We now address Mr. Alefteras's two arguments why his guilty plea was involuntary.

> a.      *Claim of not intelligent plea because statement of facts show his force was lawful*

Mr. Alefteras argues that because bail bond recovery agents have authority to enter a dwelling to recover a fugitive, his use of force in breaking the hotel window so another agent could deploy pepper spray into the room was lawful. He contends the trial court substituted a standard of reasonableness for a standard of lawfulness. We disagree.

The trial court's discussion of reasonableness was regarding a bail bondsman's limited common law privilege to use force to take a person into custody. Division One of this court discussed that privilege in *Applegate v. Lucky Bail Bonds, Inc.*, 197 Wn. App. 153, 155, 387 P.3d 1128 (2016), holding that the *Restatement (Second) of Torts* §§ 205 and 206 correctly stated the scope of a bail bond recovery agent's privilege to enter land

17

and dwellings. This is a limited privilege; an actor who exercises the privilege unreasonably is subject to liability for harm caused by his unreasonable conduct. RESTATEMENT (SECOND) OF TORTS § 214(1) (AM. LAW INST. 1965). Thus, the reasonableness of Mr. Alefteras's actions, as established by the detective's statement of facts, speaks directly to whether he exceeded his common law privilege and acted unlawfully. Because a reasonable trier of fact could have agreed with the State's expert that Mr. Alefteras exceeded his privilege, we conclude the statement of facts supports Mr. Alefteras's plea.

> b.      *Claim of unknowing plea because not apprised of an element of the charged crime*

Mr. Alefteras argues his plea was not knowing because he was not apprised of an element of criminal mischief—that the use of force against property was *unlawful*. In support of his argument, he points to his statement of plea of guilty, which omits this element.

Mr. Alefteras did not raise this argument to the trial court. We generally do not address issues raised for the first time on appeal. Mr. Alefteras identifies no basis on

18

which we should do so here.  *See* RAP 2.5(a).  We therefore decline to address this issue.[2]

B.      RELIABILITY OF DETECTIVE TOFSRUD'S AFFIDAVIT

For the first time on appeal, Mr. Alefteras challenges the trial court's use of the detective's statement of facts.

Mr. Alefteras seems to argue the trial court had a nondiscretionary duty to sua sponte inquire into Detective Tofsrud's reliability before it used the statement of facts to establish a factual basis for Mr. Alefteras's guilty plea.  He provides no authority supporting this proposition, and the argument was not raised in Mr. Alefteras's CrR 7.8 motion.  Again, we generally decline to review issues raised for the first time on appeal. Mr. Alefteras identifies no basis on which we should do so here.  *See* RAP 2.5(a).  We therefore do not address the issue further.

C.      *BRADY* VIOLATION

Mr. Alefteras contends the trial court erred in not granting his CrR 7.8 motion based on his contention the State improperly withheld *Brady* evidence; specifically, that IA was investigating Detective Tofsrud for potential dishonesty.  We disagree.

_____

[2] Mr. Alefteras's argument is contradicted by his multiple acknowledgements of having received, read, and understood the amended information, which correctly stated the elements of criminal mischief, including that the use of force against property was unlawful.

In *Brady*, the Supreme Court held that criminal defendants have a due process right to receive material, favorable evidence from the prosecution as part of their constitutionally guaranteed right to a fair trial. *Brady*, 373 U.S. at 87. This includes impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

A defendant pleading guilty, however, forgoes many constitutional guarantees, including a fair trial. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). Because of the seriousness of forfeiting these constitutional rights, guilty pleas must be voluntary and entered knowingly, intelligently, and "'with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* at 629 (quoting *Brady*, 397 U.S. at 748). Impeachment evidence, however, goes to the fairness of a trial, not the voluntariness of a guilty plea. *Id.* Thus, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633. For this reason, the State was not required to produce *Brady* evidence prior to Mr. Alefteras's plea.

At the hearing on his CrR 7.8 motion, Mr. Alefteras conceded *Ruiz* held that *Brady* evidence did not need to be disclosed before a plea agreement, but suggested the Washington Constitution provided greater protections. On appeal, he does not argue that

20

No. 37925-6-III
*State v. Alefteras*

point or provide a *Gunwall*[3] analysis. We therefore may not review this issue. *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 143, 298 P.3d 704 (2013).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.        Fearing, J.

---

[3] *State v. Gunwall*, 106 Wn.2d 54, 62-63, 720 P.2d 808 (1986) (Washington courts will not analyze whether state constitutional protections are greater than federal constitutional protections without an analysis of six nonexclusive factors, known as *Gunwall* factors).

21